UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LOUIS CHARRIEZ,

               Petitioner,

  – against –

CHARLES GREINER,

               Respondent.

**MEMORANDUM,
ORDER AND JUDGMENT
DENYING PETITION**

02-CV-1560

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **MAR 2 6 2010** ★

BROOKLYN OFFICE

**JACK B. WEINSTEIN, United States District Judge:**

**Table of Contents**

I.   Introduction .................................................................................................................2

II.  Facts and Procedural History.......................................................................................3

   A.   Crime of Conviction ...........................................................................................3

   B.   State Proceedings................................................................................................4

   C.   Federal Habeas Petition ......................................................................................7

III.  Law...............................................................................................................................9

   A.   Antiterrorism and Effective Death Penalty Act ................................................9

   B.   Exhaustion.........................................................................................................11

   C.   Procedural Bar ..................................................................................................11

   D.   Limitations Period.............................................................................................14

   E.   Right of Confrontation......................................................................................17

   F.   Legal Sufficiency of Evidence .........................................................................17

   G.   Ineffective Assistance of Counsel.....................................................................18

   H.   Post-Conviction Access to Biological Evidence...............................................21

   I.    Impartial Jury....................................................................................................21

   J.   Errors of State Law...........................................................................................22

       1.   New York Law Concerning Duty of Witnesses to Come Forward.............22

       2.   New York Law Concerning Intentional and Depraved Indifference Murder .............23

   K.   Certificate of Appealability...............................................................................28

IV.  Analysis of Claims.....................................................................................................29

1



A.  Original Habeas Petition ............................................................................ 29
    1.  Right of Confrontation ...................................................................... 29
    2.  Failure to Prove Guilt Beyond a Reasonable Doubt ................................. 30
    3.  Ineffective Assistance of Appellate Counsel ........................................... 32
B.  Supplemental Habeas Petition ..................................................................... 33
    1.  Failure to Allow DNA testing .............................................................. 33
    2.  Ineffective Assistance of Counsel and Lack of Impartial Jury ..................... 34
    3.  Legal Sufficiency of the Evidence ........................................................ 36
V.  Conclusion ................................................................................................... 39

## I.  Introduction

Petitioner Louis Charriez ("defendant") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted of second degree murder in 1997 in the Supreme Court for Kings County, New York. *See* N.Y. Penal Law § 125.25(2). A sentence of twenty-five years to life is being served. Defendant requests federal habeas relief on the basis of alleged violations of his federal constitutional rights in connection with his state court trial and appeals.

This is one of a series of habeas corpus cases arising from earlier confusion in the New York Criminal Law between intentional murder and murder by depraved indifference. *See* 28 U.S.C. § 2254; N.Y. Penal Law §§ 125.25(1), (2); *see also, e.g., Gaskin v. Graham*, No. 08-CV-1124, 2009 WL 5214498 (E.D.N.Y. Dec. 30, 2009); *Rustici v. Philips,* 497 F. Supp.2d 452 (E.D.N.Y. 2007); *Guzman v. Greene,* 425 F. Supp. 2d 298 (E.D.N.Y. 2006). That issue has now been resolved by the New York Court of Appeals, holding that a direct one-on-one altercation such as that involved in the present case should in general be treated as an intentional murder. *See People v. Feingold,* 852 N.E.2d 1163, 1167 (N.Y. 2006).

In the instant case, a bizarre, momentary flare-up of temper resulted in defendant's stabbing and killing his victim. The jury found that he had not intended to kill, but that death

2

resulted from depraved indifference. It is not unlikely that the jury was under the impression that depraved indifference murder was a lesser included offense of intentional murder, and that it was subject to a penalty lighter than that for intentional murder, but heavier than that for a lesser included manslaughter. *See infra* Part IV.B.3. If so, the jury was wrong—depraved indifference and intentional killing are subject to the same penalties under New York Law. Had the conviction occurred today, it would have been clear error to have charged defendant with both intentional and depraved indifference murder, as was done here. Unfortunately for defendant, the Court of Appeals' clarifications do not retroactively protect him.

The petition must be denied for reasons described below.

## II.     Facts and Procedural History

The following summary of the facts and procedural history of defendant's case is drawn from the trial transcript, available documents from the state court record, and from an affirmation and affidavits submitted by defendant and respondent. *See* Def.'s Affirm. in Supp. of Mot. to Amend, Docket Entry No. 30 (filed Apr. 14, 2009); May 14, 2002 Resp.'s Aff. in Opp. to Pet. for Writ of Habeas Corpus, Docket Entry No. 6; Aug. 10, 2009 Resp.'s Aff. in Opp. to Def.'s Mot to Amend Pet. for Writ of Habeas Corpus, Docket Entry No. 42.

### A.     Crime of Conviction

Evidence presented at trial indicated that on January 10, 1997, in the hallway of 172 Miller Avenue in Brooklyn, defendant stabbed Larry Byrd in the chest with a knife. The weapon was identified as having been given to defendant a few weeks before the stabbing. The knife went through Byrd's down jacket and pierced his heart. Byrd buckled and said that defendant had "stuck" him. Defendant threatened that he would "stick" him again and ordered Byrd out of

the building. As defendant was fleeing, a resident saw him bend over the victim and say that Byrd had gotten what he deserved. Byrd died later that day.

## B.    State Proceedings

Defendant was charged with second degree intentional murder, *see* N.Y. Penal Law § 125.25(1), second degree depraved indifference murder, *see id.* § 125.25(2), first degree manslaughter, *see id.* § 125.20[1], and second degree manslaughter, *see id.* § 125.15[1].

A first trial resulted in a hung jury and mistrial. After a second jury trial, defendant was acquitted of intentional murder and convicted of depraved indifference murder. He was sentenced to a term of imprisonment of twenty-five years to life.

Defendant appealed from his judgment of conviction claiming: (1) that the trial court had erroneously precluded defendant from eliciting evidence that the victim had previously sustained a bullet wound in his back, which allegedly supported defendant's claim that the victim had a violent disposition; and (2) that the prosecution had failed to prove guilt of depraved indifference murder beyond a reasonable doubt, and that the verdict was against the weight of the evidence.

The Appellate Division of the New York Supreme Court unanimously affirmed on direct appeal. *See People v. Charriez*, 273 A.D.2d 249 (N.Y. App. Div. 2000). It held that defendant's claim that the evidence was legally insufficient to establish guilt of second-degree murder was unpreserved for appellate review; and that, "[i]n any event," the evidence was legally sufficient. The claim that evidence of the victim's pervious wounds was improperly excluded was found to be without merit.

Defendant's application for leave to appeal to the New York Court of Appeals was denied. *People v. Charriez*, 95 N.Y.2d 864 (2000). No appeal to the United States Supreme Court was sought.

Defendant then moved in the Appellate Division for a writ of error coram nobis, claiming that appellate counsel had been ineffective for failing to argue on appeal that the prosecutor did not lay a proper foundation for his cross-examination of alleged alibi witnesses, and that the trial court gave a deficient jury instruction concerning the absence of any obligation for the alibi witnesses to come forward and report information about a crime to law enforcement officials. The Appellate Division denied defendant's motion. *See People v. Charriez*, 286 A.D.2d 774 (N.Y. App. Div. 2001).

Next he moved in the trial court to overturn his conviction. *See* N.Y. Crim. Proc. Law § 440.10. He claimed that: (1) the evidence was legally insufficient to support a depraved indifference conviction because the prosecution failed to disprove defendant's justification defense; (2) the purported justification defense was unnecessarily hampered by the exclusion of psychiatric testimony regarding defendant's state of mind; (3) the trial court erroneously excluded evidence of prior violent acts allegedly committed by the victim, and trial counsel was ineffective for not prevailing on this issue; (4) the trial court should have submitted to the jury second degree manslaughter and criminally negligent homicide as lesser-included offenses of second degree murder; (5) the trial court and the prosecutor impermissibly shifted the burden of proof by requiring defendant to prove the elements of justification; (6) the evidence supported only a conviction for either second degree manslaughter or criminally negligent homicide; (7) the grand jury proceedings were defective; (8) defendant's sentence was harsh and excessive; and (9) defendant was denied a fair trial by the trial court's failure to excuse two jurors, or to conduct a sufficient inquiry on the record regarding various juror issues.

The section 440.10 motion was denied, on the ground that his claims were procedurally barred or without merit. Applications for certificates to appeal to the Appellate Division and then to the Court of Appeals were denied.

Defendant moved for the second time in the Appellate Division for a writ of error coram nobis, complaining that appellate counsel failed to challenge defendant's indictment as multiplicitous. The motion was denied. *See People v. Charriez*, 21 A.D.3d 1036 (N.Y. App. Div. 2005). An application for leave to appeal to the Court of Appeals was denied. *See People v. Charriez*, 5 N.Y.3d 882 (2005).

Defendant filed a second section 440.10 challenge to his conviction. The evidence of depraved indifference murder was said to be legally insufficient with respect to the element of recklessness, because it was only consistent with intentional murder. He also claimed factual innocence. The motion was denied. The claim of legal insufficiency was held to be procedurally barred because defendant had failed to raise it on appeal. There had been no retroactive change in the controlling law on this issue to excuse defendant's procedural default. Applications for certificates to appeal to the Appellate Division and the Court of Appeals were denied.

For a third time defendant moved for a writ of error coram nobis, arguing that his appellate counsel had failed to claim that trial counsel was ineffective for: (1) failing to move to dismiss the depraved indifference count on the ground that the evidence only supported intentional murder, and for failing to preserve a legal insufficiency claim; (2) failing to ensure a sufficient record in order to raise juror disqualification issues; and (3) not challenging a juror who had child care problems. The motion was denied. *See People v. Charriez*, 43 A.D.3d 1075 (N.Y. App. Div. 2007). Leave to appeal to the Court of Appeals was denied. *See People v. Charriez*, 9 N.Y.3d 1005 (2007).

Defendant then moved in the trial court for DNA testing of the victim's goose down jacket and of the knife recovered after the incident, pursuant to N.Y. Criminal Procedure Law § 440.30(1-a). The motion was denied. *See* Decision and Order, *People v. Charriez*, Indictment No. 1778/97 (N.Y. Sup. Ct. Dec. 20, 2007). Consistent with a stipulation that had been entered into at trial, the court found that there was no blood on the knife that could be tested. It observed that the victim's jacket would probably be stained with the victim's blood and concluded that defendant had not shown that a DNA test of the jacket would create a "'reasonable probability that the verdict would have been more favorable to defendant.'" *Id* at 3 (quoting N.Y. Crim. Proc. § 440.30(1-a)(a); citing *People v. Figueroa*, 36 A.D.3d 458, 459 (N.Y. App. Div. 2007) (court properly denied motion for DNA testing where trial testimony left no basis to suspect that blood near victim's body came from anyone but victim)). An application to appeal was denied by the Appellate Division.

A subsequent motion for reargument and renewal of defendant's motion for DNA testing was denied. Applications for certificates to appeal this denial to the Appellate Division and the Court of Appeals were denied.

### C.    Federal Habeas Petition

Defendant seeks a federal writ of habeas corpus. His original habeas petition, dated October 22, 2001, raised three grounds for habeas relief: (1) denial of defendant's right of confrontation, by the trial court's refusal to allow cross-examination of the medical examiner about previously sustained wounds on the victim's body, to establish the victim's propensity for violence; (2) legal insufficiency of the evidence to establish second-degree murder, based on contradictions in the testimony of prosecution witnesses, and favors two prosecution witnesses received in exchange for testifying; and (3) ineffective assistance because appellate counsel did

not challenge questions by the prosecution concerning alibi witnesses' failure to come forward and report information to law enforcement officers, and because on appeal there was not raised an ineffective assistance of trial counsel claim, based on trial counsel's failure to object to the trial court's jury instruction concerning the absence of any obligation for witnesses to come forward. *See* Petition for Writ of Habeas Corpus §§ 12.A-C, Docket Entry No. 2 (the "Petition" or "Pet.")

Federal habeas proceedings were stayed until 2009, to allow defendant to exhaust state court remedies. *See* Sept. 19, 2003 Order, Docket Entry No. 11; Mar. 28, 2005 Order, Docket Entry No. 22; Aug. 21, 2008 Order, Docket Entry No. 28.

Defendant moved for discovery of serology tests on the knife recovered at the scene of the crime, pursuant to habeas corpus Rule 6(A). *See* Mar. 23, 2009 Notice of Mot. Seeking Leave for Discovery Pursuant to Title 28 U.S.C. § 2254 Rule 6(a). Defendant then moved to lift the stay on these proceedings, and for leave to amend his habeas petition. *See* Apr. 9, 2009 Mot. to Amend/Correct/Supplement Petition for Writ of Habeas Corpus, Docket Entry No. 30 (the "Supplemental Petition" or "Supp. Pet.").

Defendant's Supplemental Petition provided further argument in support of claims in the original Petition, and raised additional grounds for habeas relief: (1) that the state erred in denying his motion for DNA testing of the knife and jacket, because the results would have undermined the credibility of prosecution witnesses; (2) that the evidence of depraved indifference murder was legally insufficient and the verdict was against the weight of the evidence, in that the proof at trial supported only a theory of intentional murder; and (3) that appellate counsel was ineffective in failing to raise juror disqualification claims, and failing to claim that trial counsel had been ineffective for not ensuring that the voir dire was on the record

8

and for not challenging a juror's qualification; and (4) that defendant was denied a fair and impartial jury through the trial court's failure to investigate possible juror biases. *See* Supp. Pet.

The stay of proceedings in this court was lifted, the magistrate judge was directed to appoint counsel for defendant, and defendant's discovery request was referred to the magistrate judge. *See* Apr. 15, 2009 Order, Docket Entry No. 29.

Briefs and supporting submissions were received from defendant, defendant's counsel, and respondent. Argument on defendant's habeas petition was heard in a non-evidentiary hearing. Counsel for defendant and respondent presented briefs and oral arguments that were exceptionally cogent.

## III. Law

### A. Antiterrorism and Effective Death Penalty Act

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *See, e.g., Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citing, e.g., *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the

9

Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Bell*, 535 U.S. at 694. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. In order to grant the writ there must be "[s]ome increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted); *see also Richard S. v. Carpinello*, 589 F.3d 75, 80 (2d Cir. 2009).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, 341 F.3d 104, 111 (2d Cir. 2003) (district court's habeas decision remanded for reconsideration in light of "the more general teachings" of applicable Supreme Court decision). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary*, 340 F.3d 63, 72 (2d Cir. 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the

applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B.    Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1989). "This exhaustion requirement [was] . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The exhaustion requirement required the petitioner to have presented to the state court "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Graziano v. Lape*, No. 9:04-CV-84, 2008 WL 2704361, at *5 n.9 (N.D.N.Y. 2008) (state's failure to raise exhaustion requirement does not waive the issue).

### C.    Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule,

11

"unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In determining whether a procedural bar is sufficient to preclude habeas review, a federal court must consider as "guideposts" the following:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (citing *Lee v. Kemna*, 534 U.S. 362 (2002))).

State procedural rules are insufficient to bar federal review of a claim if the rules are not strictly or regularly followed, *see Barr v. City of Columbia*, 378 U.S. 146, 149 (1964), are novel and unforeseeable, *see NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958), allow noncomplicance, *see Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 233-34 (1969), or impose undue burdens on the assertion of federal rights, *see Douglas v. Alabama*, 380 U.S. 415, 422-23 (1965). *See also Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *see generally* Kermit Roosevelt III, *Light from Dead Stars: The Procedural Adequate and Independent State Ground Reconsidered*, 103 Colum. L. Rev. 1888 (2003) (addressing origins of the doctrine).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need

not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, the claim is not preserved. *See Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996). "[W]hen a state court uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir. 2000) (alteration omitted); *see also Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006).

Claims that are not procedurally barred are presumed to have been decided on the merits, such that AEDPA deference applies:

> [T]he Circuit court in *Jimenez* held that "federal habeas courts should distinguish between two mutually exclusive categories of state-court decisions disposing of a federal claim: (1) state-court decisions that fairly appear either to rest primarily on federal law, or to be interwoven with federal law and (2) state-court decisions that fairly appear to rest primarily on state procedural law." 458 F.3d at 138. If the reviewing court determines that it has "'good reason' to doubt that the decision rests on an independent and adequate state ground," *id.* at 137 (quoting *Coleman v. Thompson*, 501 U.S. at 739), the claim is presumed to have been adjudicated on the merits, and AEDPA deference to the state court adjudication applies. *Id.* at 146.

*Rush v. Artuz*, No. CV-99-2840, 2009 WL 982418, at *5 (E.D.N.Y. April 10, 2009). "[I]n the absence of a clear and express reliance on a state procedural bar, those state court decisions that fall within the first category must be 'afforded AEDPA deference as adjudications on the merits under 28 U.S.C. § 2254(d).'" *Id.* (quoting *Jimenez*, 458 F.3d at 145).

### D.    Limitations Period

The limitations period for the filing of an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment is one year. *See* 28 U.S.C. § 2244(d)(1). The period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). A conviction becomes final for habeas purposes when the ninety-day period for filing a petition for a writ of certiorari to the United States Supreme Court has expired. *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003); *see also* Sup. Ct. R. 13.

In calculating the one-year limitation period, the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted." 28 U.S.C. § 2244(d)(2).

The "filing of creative, unrecognized motions for leave to appeal" does not toll the statute of limitations. *Adeline v. Stinson*, 206 F.3d 249, 253 (2d Cir. 2000); *see also Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . . [T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." (emphasis in original; footnote omitted)).

The term "pending" in the statute has been construed broadly to encompass all the time during which a state prisoner attempts, through proper use of state procedures, to exhaust state court remedies with regard to a particular post-conviction application. *See Saunders v. Senkowski*, 587 F.3d 543, 548-49 (2d Cir. 2009); *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir.

1999), *aff'd*, 531 U.S. 4 (2000). "[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett*, 199 F.3d at 120; *see also Carey v. Saffold*, 536 U.S. 214, 219-21 (2002) (holding that the term "pending" includes the intervals between a lower court decision and a filing of a notice of appeal in a higher court).

The period of limitations set forth in AEDPA ordinarily does not violate the Suspension Clause. *See Rodriguez v. Artuz*, 990 F. Supp. 275, 283 (S.D.N.Y. 1998), *aff'd* 161 F.3d 763 (2d. Cir. 1998), (AEDPA statute of limitations is not, "at least in general," an unconstitutional suspension of the writ); *see also Hill v. Dailey*, 557 F.3d 437, 438 (6th Cir. 2009) ("Like every other court of appeals to address the issue, this court has held that AEDPA's one-year statute of limitations does not improperly suspend the writ of habeas corpus." (citing cases)); *Muniz v. United States*, 236 F.3d 122, 128-29 (2d Cir. 2001) ("[T]he Suspension Clause does not always require that a first federal petition be decided on the merits and not barred procedurally[.]" (internal quotation marks and alteration omitted)).

"[A]n application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)," and therefore the section does "not toll the limitation period during the pendency of [a petitioner's] first federal habeas petition." *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Although AEDPA's one-year limitations period is not tolled during the pendency of a properly filed federal habeas petition, this statute of limitations is not jurisdictional and may be tolled equitably. *See Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "To warrant equitable tolling, a petitioner must show (1) that he has been

15

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."
*Diaz*, 515 F.3d at 153 (internal quotation marks omitted).

Prisoners cannot circumvent the strict AEDPA limitations period by invoking the "relation back" doctrine, arguing that a new petition should be treated as having been filed on the same day as a first petition. *See Gannon v. Continuum Health Partners, Inc.*, No. 06 Civ. 5133, 2007 WL 2040579, at *4 (S.D.N.Y. July 12, 2007) ("The Second, Third, and Ninth Circuits agree with the First that, in the context of habeas petitions, the relation back principle is inapplicable where an entirely new complaint is filed." (citing cases)) As the Court of Appeals has explained:

> If the limitations period were interpreted as Petitioner argues, the result would be impractical. A habeas petitioner could file a non-exhausted application in federal court within the limitations period and suffer a dismissal without prejudice. He could then wait decades to exhaust his state court remedies and could also wait decades after exhausting his state remedies before returning to federal court to "continue" his federal remedy, without running afoul of the statute of limitations.

*Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (alterations omitted; quoting *Graham v. Johnson*, 168 F.3d 762, 780 (5th Cir. 1999)).

A habeas petition can be "amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. A motion to amend a petition where the statute of limitations has run is governed by Rule 15(c) of the Federal Rules of Civil Procedure. *Fama v. Commissioner of Correctional Services*, 235 F.3d 804, 815 (2d Cir. 2000). Pursuant to Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"

16

A proposed amendment does not relate back to the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix,* 545 U.S. 644, 650 (2005). An amended petition does not relate back merely because it and the original petition stem from the same trial and conviction. *Id.* at 662-64.

### E.     Right of Confrontation

The Confrontation Clause of the Sixth Amendment to the Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" The Confrontation Clause "provides two types of protection for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987).

The Confrontation Clause does not prohibit a trial court from imposing some limits on a defense attorney's cross-examination of a prosecution witness. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986); *see also United States v. Figueroa,* 548 F.3d 222, 229 (2d Cir. 2008).

### F.     Legal Sufficiency of Evidence

To the degree petitioner claims that his guilt was not proven beyond a reasonable doubt, the relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Petitioner

17

"bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *See, e.g., Dixon v. Miller*, 293 F.3d 74, 81 (2d. Cir. 2002). To the degree petitioner claims the verdict was against the weight of the evidence, such a claim does not present a federal constitutional issue. *See, e.g., Barnes v. Graham*, 07-CV-2530, 2009 WL 1424116, at *7 (S.D.N.Y. May 20, 2009) ("[I]t is well-established that a 'weight of the evidence' claim is not cognizable on federal habeas review because it does not present a federal constitutional issue.").

## G.    Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). The Supreme Court has explained:

> In giving meaning to the requirement . . . we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on an ineffective assistance claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694; *see also Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, *even if the errors of counsel cannot be shown by a preponderance* of the evidence to have determined the outcome." *Henry v. Poole*, 409 F.3d 48, 64 (2d Cir. 2005) (original emphasis; quoting *Strickland*, 466 U.S. at 694). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

Strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91; *see also Eze*, 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for . . . counsel's decisions"). Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. There is "a strong

19

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (internal quotation marks omitted)); *Gueits v. Kirkpatrick*, 618 F.Supp.2d 193, 236 (E.D.N.Y. 2009). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994); *Gueits*, 618 F.Supp.2d at 236. Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord*, No. 00 CIV. 5510, 2002 U.S. Dist. LEXIS 19923, at *34-35 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

The *Strickland* test is used with respect to claims of ineffective appellate counsel. *See Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes*, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Either a federal or a state law claim that was improperly omitted from an appeal may

form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state claim fell outside the wide range of professionally competent assistance." *Id.* (internal quotation marks and elipsis omitted).

## H.     Post-Conviction Access to Biological Evidence

There is no automatic federal constitutional right to post-conviction access to biological evidence. The Supreme Court recently considered whether there is

> a narrow right of postconviction access to biological evidence for DNA testing "where [such] evidence was used to secure [defendant's] conviction, the DNA testing is to be conducted using methods that were unavailable at the time of trial and are far more precise than the methods that were then available, such methods are capable of conclusively determining whether [defendant] is the source of the genetic material, the testing can be conducted without cost or prejudice to the State, and the evidence is material to available forms of post-conviction relief."

*Dist. Atty's Office v. Osbourne*, 129 S. Ct. 2308, 2336 (2009) (Stevens, J., dissenting, quoting *Dist. Atty's Office v. Osbourne*, 521 F.3d 1118, 1142 (9th Cir. 2008)). The Court held that there is no such federal constitutional right. *See generally* 129 S. Ct. at 2312-23 (majority opinion, rejecting right to post-conviction access to biological evidence).

## I.     Impartial Jury

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial[ ] by an impartial jury." *See Duncan v. Louisiana*, 391 U.S. 145, 159 (1968) (applying Sixth Amendment to the states). "The trial court's treatment of juror misconduct and its decisions on a jury's impartiality are reviewed for abuse of discretion only, and only if juror misconduct and actual prejudice are found." *Jones v. Donnelly*, 487 F. Supp. 2d 403, 414 (S.D.N.Y. 2007) (internal quotation marks omitted); *see also Patton v. Yount*, 467 U.S.

1025, 1031 (1984) ("[T]he trial court's findings of impartiality might be overturned only for 'manifest error.'")

"On § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 813 (2d Cir. 2000)); *see also Patton*, 467 U.S. at 1036-38. The trial judge's impartiality decision is considered a factual determination. *See, e.g., id.*; *Thompson v. Keohane*, 516 U.S. 99, 111 (1995). This "determination is essentially one of credibility, and therefore largely one of demeanor[,] . . . the trial court's resolution of such questions is entitled . . . to special deference." *Patton*, 467 U.S. at 1038 (internal quotation marks omitted).

### J.    Errors of State Law

Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). But this does not mean that "errors under state law cannot result in cognizable violations of a constitutional right to due process." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). "Once states have promulgated laws to define criminal conduct . . . federal due process protects a defendant from conviction unless he is shown in a fair proceeding to have violated those laws." *Id.*; *see also Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (the Due Process Clause requires that state courts conducting criminal trials "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice'" (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941))).

### 1.    New York Law Concerning Duty of Witnesses to Come Forward

As a matter of New York law, the decision whether to allow a prosecutor to cross-examine a defense witness regarding that witness's prior failure to come forward is entrusted to the "sound discretion" of the trial court. *People v. Dawson*, 50 N.Y.2d 311, 322 (1980); *see also*

*People v. Hydleburg*, 127 A.D.2d 792, 792 (N.Y. App. Div. 2d Dep't 1987). Where such questioning is permitted, "the Trial Judge should inform the jurors, upon request, that the witness has no civic or moral obligation to volunteer exculpatory information to law enforcement authorities and that they may consider the witness' prior failure to come forward only insofar as it casts doubt upon the witness' in-court statements by reason of its apparent inconsistency." *Dawson*, 50 N.Y.2d at 322-23.

### 2.    New York Law Concerning Intentional and Depraved Indifference Murder

Recent decisions by the New York Court of Appeals have affected the elements of "depraved indifference" murder. *See, e.g., People v. Feingold,* 852 N.E.2d 1163 (N.Y. 2006). These modifications may affect the validity of the convictions of many people who were charged with both intentional and depraved indifference murder, but convicted only of depraved indifference murder. The changes are, however, prospective only; they apply to convictions that were on direct appeal in 2006 or occurred subsequently.

Federal courts reviewing section 2254 habeas petitions by petitioners convicted in New York of depraved indifference murder have reviewed the recent changes in New York state law. *See, e.g., Gaskin v. Graham*, No. 08-CV-1124, 2009 WL 5214498, at *8-10 (E.D.N.Y. Dec. 30, 2009); *Rustici v. Philips,* 497 F. Supp. 2d 452, 483 (E.D.N.Y. 2007); *Guzman v. Greene,* 425 F. Supp. 2d 298, 313 (E.D.N.Y. 2006). The thorough and instructive summary provided in the recent decision in *Gaskin v. Graham* merits quotation at length:

> New York depraved indifference murder law is defined as follows: "Under circumstances evincing a depraved indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and

23

consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." N.Y. Penal Law § 15.05(3).

"[I]t has never been permissible in New York for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim.'" *Policano v. Herbert*, 507 F.3d 111, 114-115 (2d Cir. 2007) (quoting *Policano v. Herbert*, 7 N.Y.3d 588, 825 N.Y.S.2d 678, 859 N.E.2d 484, 492-96 (N.Y.2006) (explaining issues certified by the Second Circuit)).

. . . [Recent New York state court decisions] led to and were the result of the fundamental shift in New York's homicide jurisprudence in which defendants involved in one-on-one confrontations with victims could not be convicted of depraved indifference murder except in unusual circumstances. *See People v. Suarez*, 6 N.Y.3d 202, 811 N.Y.S.2d 267, 844 N.E.2d 721, 728 (N.Y.2005); *People v. Feingold*, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (N.Y.2006). The evolution of New York law with respect to the depraved indifference statute is discussed in detail in *Rustici v. Philips*, 497 F.Supp.2d 452, 483 (E.D.N.Y.2007) and *Guzman v. Greene*, 425 F.Supp.2d 298, 313 (E.D.N.Y.2006), but a brief summary of the developments under New York law in connection with this statute is warranted.

a. New York's Depraved Indifference Statute

[Prior to 2006], the law as stated in *People v. Register* and *People v. Sanchez* was controlling. *See Rustici*, 497 F.Supp.2d at 483. Recklessness was the required mental state for depraved indifference murder and the depravity and indifference was assessed objectively based on a review of the circumstances of the crime. *See People v. Register*, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704, 705-09 (N.Y.1983) (upholding conviction for depraved indifference murder where defendant entered a crowded bar with a pistol, drank for several hours stating that he was "'going to kill somebody tonight,' or similar words," then later shot at close range a person who had been arguing with his friend, shot a second person by mistake, and shot a third person for no explained reason), *overruled by People v. Feingold*, 7 N.Y.3d 288,

819 N.Y.S.2d 691, 852 N.E.2d 1163 (N.Y.2006); *see also People v. Sanchez,* 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204, 206-07, 211-12 (N.Y.2002) (upholding conviction for depraved indifference murder when defendant fired a gun pointed at the victim's chest from a distance of twelve to eighteen inches and then fled), *overruled by People v. Feingold.*

During the time of the *Register/Sanchez* line of cases, the New York Court of Appeals held that it was not inappropriate for the trial court to let the jury decide whether defendants should be convicted of intentional or depraved indifference murder. *Sanchez,* 748 N.Y.S.2d 312, 777 N.E.2d at 210-11 (asking "whether, on this record, based on an objective assessment of the risk defendant recklessly created and disregarded, the likelihood of causing death from defendant's conduct was so obviously severe that it evinced a depraved indifference to human life"). The Court of Appeals reasoned that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life," and that the jury could "reasonably have concluded that defendant's conduct was either reckless and depraved, or intentional." *Id.* at 206 (noting that "the jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an instantaneous, impulsive shooting-perhaps to disable or frighten [the victim], rather than to kill him").

The Second Circuit has similarly found these cases during this time to stand for the proposition that "the evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim even if it might, on the same facts, properly conclude that the murder was intentional." *Policano v. Herbert,* 430 F.3d 82, 91 (2d Cir.2005).

However, there have been significant developments in New York regarding the law of depraved indifference murder and the legal sufficiency of evidence supporting such a claim since *Register* and *Sanchez.* *See Rustici v. Philips,* 497 F.Supp.2d 452, 484-86 (E.D.N.Y.2007) (discussing developments in New York law regarding the depraved indifference statute and sufficiency of evidence); *see also Guzman v. Greene,* 425 F.Supp.2d 298, 307-13 (E.D.N.Y.2006) (same). In *Register,* the court held that recklessness is the mens rea for depraved indifference murder. *Register,* 469 N.Y.S.2d 599, 457 N.E.2d at 707. Beginning in 2003, however, several cases began restricting the circumstances under which a defendant could be found guilty of depraved indifference murder. *See, e.g., People v. Suarez,* 6 N.Y.3d 202, 811 N.Y.S.2d 267, 844 N.E.2d 721 (N.Y.2005); *People v. Gonzalez,* 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273

(N.Y.2004); *People v. Payne*, 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634 (N.Y.2004); *People v. Hafeez*, 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (N.Y.2003). Specifically, in *Suarez*, the Court of Appeals stated:

> [S]omeone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies . . . . Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder—a result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent"—depravedly or otherwise—to the fate of that person, we underscore what we said in *Payne: "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."*

811 N.Y.S.2d 267, 844 N.E.2d at 728 (emphasis added).

Moreover, in 2006, the New York Court of Appeals in *People v. Feingold,* 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (N.Y.2006), re-examined its depraved indifference jurisprudence and explicitly overruled *Sanchez* and *Register.* In doing so, the Court of Appeals held that depraved indifference is a culpable mental state. *Feingold,* 819 N.Y.S.2d 691, 852 N.E.2d at 1167. Specifically, the Court of Appeals explained:

> We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state. Our dissenting colleagues contend that this final step in the overruling of *Register* is unwarranted and unnecessary. Perhaps we would agree with that were it not for the setting in which the present case comes to us. In earlier cases (*Hafeez, Gonzalez, Payne, Suarez* ), we reversed depraved indifference murder convictions without having to discuss explicitly the question of mens rea. It was enough to say—and we said it repeatedly—that those defendants did not commit depraved indifference murder because depravity or indifference was lacking . . . . Beginning with *Hafeez,* the *Register/Sanchez* rationale was progressively weakened so that it would no longer support most depraved indifference murder convictions, particularly one-on-one shootings or stabbings

. . . . In *Suarez,* it was not necessary for us to state explic[i]tly whether depraved indifference is a mental state (mens rea). In the case before us, however, the trial judge rendered his verdict in a way that requires us to address directly the question of mens rea.

*Id.* Applying this mens rea requirement, the Feingold court held that the conviction could not stand because the factfinder determined that the defendant did not act with depraved indifference *Id.* at 1167-68.

Thus, as the New York Court of Appeals explained in a subsequent decision in 2006, the interpretation of this element—namely, "under circumstances evincing a depraved indifference to human life"—of the depraved indifference murder statute "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea, beginning with our decision in *Hafeez* in 2003, continuing in our decisions in *Gonzalez, Payne* and *Suarez* in 2004 and 2005, and ending with our decision in *Feingold* in 2006." *Policano,* 825 N.Y.S.2d 678, 859 N.E.2d at 494-95.

### b. Application of New York's Depraved Indifference Statute to the Instant Case

With respect to [a] challenge . . . to the sufficiency of the evidence supporting the conviction for depraved indifference murder, [federal courts] must look to New York law as it existed at the time [the] conviction became final. *See Flowers [v. Fisher],* 296 F. App'x [208,] 210 [2d Cir. 2008] ("We look to New York law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively." (citing *Policano,* 825 N.Y.S.2d 678, 859 N.E.2d at 495)); *see also Henry v. Ricks,* 578 F.3d 134, 141 (2d Cir.2009) (Due Process Clause does not require retroactive application of new case law in New York regarding interpretation of depraved indifference statute). A petitioner's conviction becomes final 90 days after the New York Court of Appeals denies leave to appeal—that is, after the period during which a litigant can petition the United States Supreme Court for a writ of certiorari ends. *See Fernandez v. Artuz,* 402 F.3d 111, 112 (2d Cir.2005).

*See Gaskin,* 2009 WL 5214498, at *8-10.

Prior to 2006, a conviction of depraved indifference required a showing that:

> defendant (1) recklessly engaged in conduct (2) which created a
> grave risk of death to another person (3) thereby causing the death
> of another person (4) under circumstances evincing a depraved
> indifference to human life. The mens rea of depraved indifference
> murder was recklessness and . . . "under circumstances evincing a
> depraved indifference to human life" defined the factual setting,
> viewed objectively, in which the risk-creating conduct occurred.

*Policano v. Herbert*, 859 N.E.2d at 494.

Under the pre-2006 standard, evidence of depraved indifference murder is legally

sufficient where the evidence is consistent with a conviction for intentional murder in a one-on-

one altercation, but the trier of fact could rationally find that the defendant acted without

homicidal intent. *See, e.g., Gaskin*, 2009 WL 5214498, at *11 (defendant took out gun during

heated altercation and shot victim, but presented evidence he had not intended to kill); *id.* at *11

(citing relevant New York state court cases); *Rustici*, 497 F. Supp. 2d at 483 (even if evidence

established that defendant purposefully shot victim, jury could have found that he did not intend

victim's death); *People v. Castellano*, 41 A.D.3d 184, 837 N.Y.S.2d 643, 643 (N.Y. App. Div.

2007) ("[D]efendant testified that, while intoxicated, he swung a knife wildly in an effort to free

himself from the decedent and another person. Given defendant's testimony, we reject his

contention that the evidence could only support a finding of intent. Under the evidence

presented, the jury could have reasonably credited portions of defendant's testimony that

supported a finding of reckless rather than intentional conduct, while at the same time rejecting

his justification defense.").

## K.    Certificate of Appealability

A certificate of appealability may be granted with respect to any one of petitioner's

claims only if petitioner can make a "substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See generally Miller-El v. Cockrell*, 537 U.S. 322 (2003).

## IV.    Analysis of Claims

Defendant's claims in support of his petition for federal habeas relief fail on the merits.

Respondent objects to certain of defendant's claims on grounds of failure to exhaust and procedural bar. *See* Respondent's Mem. of Law. in Opp. to Petition for a Writ of Habeas Corpus 8-10, Docket Entry No. 6, May 14, 2002; Respondent's Mem. of Law in Opp. to Def.'s Mot. to Amend Petition for Writ of Habeas Corpus 9-14, Docket Entry No. 42, Aug. 10, 2009 ("2009 Resp. Mem."). Defendant's Supplemental Petition, and the new claims it raises, are said to be barred in light of the limitations period applicable to federal habeas petitions. 2009 Resp. Mem. at 1-8. Neither defendant nor respondent has addressed possible tolling of the limitations period pursuant to 28 U.S.C. § 2244(d)(2) or the doctrine of equitable tolling.

Because defendant's petition fails on the merits with respect to all claims in both the original Petition and the Supplemental Petition, it is unnecessary to address exhaustion, procedural bar, and statute of limitations issues. *See, e.g.,* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

### A.    Original Habeas Petition

#### 1.    Right of Confrontation

Defendant contends that his Sixth Amendment confrontation right was denied when the trial court refused to allow him to question the medical examiner about marks on the victim's body. Defendant sought to elicit testimony about a scar and a bullet wound on victim's back, in

order to establish the victim's propensity for violence. Pet. § 12.A; *see also* Supp. Pet., Part II (expanding on confrontation argument). The claim is without merit.

Exclusion of the proposed cross-examination was appropriate. Defendant has not indicated that there was any evidence linking the victim's scar to a violent incident, or to any violent act committed by the victim. The victim's bullet wound would tend to show that the victim was a victim of violence, not that he himself had been violent. The testimony defendant sought to elicit had limited, if any, probative value with respect to the victim's alleged propensity for violence, and was at most only marginally relevant to the issues at trial.

Refusal to permit this line of cross-examination was within the trial court's "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about . . . prejudice, confusion of the issues, . . . or interrogation that is . . . only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

### 2. Failure to Prove Guilt Beyond a Reasonable Doubt

Defendant contends that the prosecution failed to prove guilt beyond a reasonable doubt, and that the verdict was against the weight of the evidence, because of unspecified contradictions in the testimony of prosecution witnesses, and because prosecution witnesses Robert McCreary and Althamease Ramsey received favorable treatment in exchange for testifying against defendant. Pet. § 12.B.

Defendant's claim appears to be procedurally barred, in light of the Appellate Division's finding that it was "unpreserved for appellate review." 273 A.D.2d at 249; *see Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir. 1996) (when state court says that claim is "not preserved for appellate review" and then rules "in any event" on the merits, that claim is not preserved). In any event, the claim is without merit.

Defendant's allegation that McCreary and Ramsey received favorable treatment in exchange for their testimony goes to the weight rather than the legal sufficiency of the evidence. The argument appears to be that McCreary and Ramsey were biased and may have provided false testimony, not that their testimony—even if believed by the jury—was legally insufficient to support defendant's conviction.

Alleged witness bias does not normally present a federal constitutional issue that would support habeas relief. *See Barnes v. Graham,* 07-CV-2530, 2009 WL 1424116, at *7 (S.D.N.Y. May 20, 2009) ("[I]t is well-established that a 'weight of the evidence' claim is not cognizable on federal habeas review because it does not present a federal constitutional issue."). Because McCreary and Ramsey's testimony must be considered in the light most favorable to the prosecution, their testimony is assumed to have been true. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (federal habeas court is limited to considering "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (original emphasis)).

Defendant's petition states generally that the prosecution's case was "smeared with contradictions from its own witnesses." *See* Pet. § 12.B. This contention is unsupported by specific allegations relating to witnesses other than McCreary and Ramsey. Any contradictions in the prosecution's case would have been for the jury to evaluate, and would go to the weight, rather than the legal sufficiency, of the evidence. For the reasons already stated, such an allegation does not present a federal constitutional issue that would support habeas relief. The biases and contradictions relied upon by petitioner were of the kind resolvable by a jury.

### 3.    Ineffective Assistance of Appellate Counsel

Defendant contends that he received ineffective assistance of appellate counsel because appellate counsel did not: (1) challenge questions by the prosecution concerning alibi witnesses' failure to come forward and report information to law enforcement officers; and (2) raise an ineffective assistance of trial counsel claim, based on trial counsel's failure to object to the trial court's jury instruction concerning the absence of any obligation for witnesses to come forward. *See* Pet. § 12.C. This claim is without merit.

The decision whether to allow cross-examination of a defense witness regarding that witness's prior failure to come forward is entrusted to the "sound discretion" of the trial court. *Dawson*, 50 N.Y.2d at 322. Consistent with New York's *Dawson* rule, the jury that convicted defendant was instructed that "the witness had no civic or moral obligation to volunteer exculpatory information to law enforcement authorities. You may consider the witness' prior failure to come forward to the police only insofar as it casts doubt upon the witness' in-court statements here by reason of its possible inconsistency." Pet. § 12.C; *see Dawson*, 50 N.Y.2d at 322-23.

Defendant's appellate counsel raised and pursued all relevant claims on appeal. Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 688, 690-91 (1984).

In light of the trial court's compliance with applicable law, defendant has not shown that appellate counsel's decision not to raise any issues on appeal "fell below an objective standard of reasonableness" measured under "prevailing professional norms," or that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

## B.     Supplemental Habeas Petition

### 1.     Failure to Allow DNA testing

Defendant contends that the trial court erred in denying his motion for DNA testing of the knife admitted into evidence at trial and of the victim's jacket, because such testing would show that the knife was not the knife that stabbed the victim. It is argued that this result would undermine the credibility of prosecution witnesses and the integrity of investigators' evidence-collection process. Supp. Pet., Part III. This claim is without merit.

The Supreme Court recently considered whether there is

> a narrow right of postconviction access to biological evidence for
> DNA testing "where [such] evidence was used to secure
> [defendant's] conviction, the DNA testing is to be conducted using
> methods that were unavailable at the time of trial and are far more
> precise than the methods that were then available, such methods
> are capable of conclusively determining whether [defendant] is the
> source of the genetic material, the testing can be conducted without
> cost or prejudice to the State, and the evidence is material to
> available forms of post-conviction relief."

*Dist. Atty's Office v. Osbourne*, 129 S. Ct. 2308, 2336 (2009) (Stevens, J., dissenting, quoting *Dist. Atty's Office v. Osbourne*, 521 F.3d 1118, 1142 (9th Cir. 2008)). The Court held that there is no such federal constitutional right. *See generally* 129 S. Ct. at 2312-23 (majority opinion, rejecting right to post-conviction access to biological evidence). In the absence of such a right, defendant's claim states no basis for federal habeas relief.

Even if such a right were recognized, the state courts' refusal to allow DNA testing would not warrant federal habeas relief. In *District Attorney's Office v. Osbourne*, Osbourne had sought to test biological material left by the perpetrator at the scene of the crime to prove that

33

Osbourne was not the source. In this case no biological evidence from the knife or jacket was used to secure defendant's conviction. Defendant seeks to establish that *the victim* was not the source of any biological material that may be on the knife. At best, this could only demonstrate that the knife may have been used on someone else in addition to the victim. No result of testing the knife could sever the connection between *defendant* and the crime of conviction.

As the New York Supreme Court observed in denying defendant's request for testing, there was no showing that any testable biological evidence was to be found on the knife—the absence of blood was stipulated to at trial. Decision and Order at 3, *People v. Charriez*, Indictment No. 1778/97 (N.Y. Sup. Ct. Dec. 20, 2007). The victim's blood would presumably be found on the down jacket; no reason has been stated why the presence or absence of any other person's biological material on the jacket would undermine the evidence against defendant.

To the extent defendant seeks to challenge the state court's denial of his request for testing under applicable New York law, the a challenge is outside the scope of federal habeas review. Federal habeas relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Any error committed by the state court did not rise to the level of a constitutional violation because there was no substantial probability that the requested testing might have produced exculpatory evidence.

### 2. Ineffective Assistance of Counsel and Lack of Impartial Jury

Defendant contends that (1) that appellate counsel was ineffective in failing to raise juror disqualification claims, and in failing to claim that trial counsel had been ineffective for not ensuring that the voir dire was on the record and not challenging a juror's impartiality; and (2) that defendant was denied a fair and impartial jury through the trial court's failure to investigate

34

possible juror biases. Supp. Pet., Part III.C (numbered nonsequentially). These claims are without merit.

Defendant has not identified any basis for doubting the jury's impartiality or competence. It is alleged: (a) that juror 8 had babysitting problems and was distracted by concern for the care of her children during trial and deliberations; (b) that another juror commented that several jurors felt that defendant's supporters in the courtroom were giving the jurors "dirty looks"; and (c) that a third juror was assisted by the court in rescheduling an appointment relating to an immigration matter, potentially causing her to feel "obligated to pay a debt owed." *Id.* Defendant complains that the absence of a stenographic record of the voir dire of juror 8 renders it more difficult for him to challenge her impartiality. *Id.*

With respect to juror 8's child-care issues, defendant concedes that this point was "deemed by the trial Court to be inconsequential," and that "whether or not defendant suffered the consequences of her distracted thought can only be surmised." *Id.* With respect to the juror who commented on "dirty looks" from defendant's supporters, defendant notes that the trial judge asked the juror if he would be affected in any way, and the juror responded "No." *Id.* With respect to the juror assisted by the court to reschedule an immigration-related appointment, any sense of a "debt owed" would have been to the court, not to the prosecution or defense.

None of defendant's allegations support an argument that the jury was partial. There is no basis for overturning the "presumption of correctness" that attaches to a state trial court's decisions concerning juror impartiality. *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 813 (2d Cir. 2000). Because defendant's allegations, even if fully credited, would raise no inference of juror partiality, defendant has suffered no prejudice from the lack of a record of juror 8's voir dire.

35

For the same reasons, there is no basis for a finding that trial or appellate counsel was ineffective with respect to jury issues. *Cf. Jones v. Donnelly*, 487 F.Supp.2d 403, 415 (S.D.N.Y. 2007). Defendant's allegations do not undermine the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. No demonstration has been made that counsel's assistance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

### 3.    Legal Sufficiency of the Evidence

Defendant contends that the evidence at trial was legally insufficient to establish his guilt of second-degree "depraved indifference" murder because the evidence supported only a finding of intentional murder. Supp. Pet., Part VI; *see also* June 8, 2009 Aff. in Supp. of Pet., Docket Entry No. 33-1; July 30, 2009 Letter from Martin Goldberg to the court, Docket Entry No. 40; Aug. 17, 2009 Reply in Supp. of Pet., Docket Entry No. 44.

Defendant's claim appears to be procedurally barred, in light of the New York Supreme Court's denial of defendant's second section 440.10 motion. *See* Decision and Order at 13, *People v. Charriez*, Indictment No. 1778/97 (N.Y. Sup. Ct. May 26, 2006). The state court held that, because defendant had failed to raise the legal sufficiency issue on direct appeal, and because no circumstance excused this failure, the claim was defaulted pursuant to the New York Criminal Procedure Law. *Id.* at 13-14 (citing N.Y. Crim. Proc. § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or

determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]")). This finding pursuant to an independent and adequate state procedural rule would bar federal habeas review. In any event, the claim is without merit.

Defendant's conviction became final in 2000. The sufficiency of the evidence must be examined under New York law at that time. *See, e.g., Rustici,* 497 F.Supp.2d at 483. It was then appropriate for the trial court to let the jury decide whether defendants should be convicted of intentional or depraved indifference murder. *See Sanchez,* 777 N.E.2d at 210-11; *see also Policano v. Herbert,* 430 F.3d 82, 91 (2d Cir.2005) ("[T]he evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim even if it might, on the same facts, properly conclude that the murder was intentional."). Subsequent New York state court decisions affecting the elements of depraved indifference murder do not apply to defendant's conviction. *See Flowers,* 296 F. App'x at 210 ("We look to New York law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively." (alteration original; citing *Policano,* 859 N.E.2d at 495))

A rational fact-finder could have found the elements of depraved indifference murder satisfied beyond a reasonable doubt. The evidence, though arguably consistent with intentional murder, rationally supported the conclusion that defendant acted without homicidal intent. Defendant and victim were engaged in a one-on-one altercation. The argument appears to have been heated. There was testimony that defendant and victim struggled over control of the knife.

37

Having wounded the victim and gotten the upper hand, rather than stab him again to ensure his death, defendant ordered the victim out of the apartment they both sought to occupy.

The jury could have rationally concluded that defendant's goal was to eject the victim from the apartment, and perhaps to wound him, but not to kill him. Defendant's claim that this evidence was legally insufficient to support his conviction of depraved indifference murder, as defined at the time of his conviction, is without merit. *See, e.g., Gaskin*, 2009 WL 5214498, at *11.

One possible explanation for the verdict is that the jury determined that defendant had no intention to kill, but had some lesser degree of culpability. They may have settled on depraved indifference murder because they assumed—incorrectly—that it was less serious than intentional murder, and likely to subject defendant to a lesser punishment. This would be an example of a jury not knowing what they were doing because they were not provided with all of the information regarding offenses and punishments that was relevant to their task. It is confusion of this nature that the Court of Appeals subsequently cleared up in its recent decisions on depraved indifference murder.

But it is inappropriate for this habeas court to speculate as to possible reasons for the jury's verdict. The defendant's actions, including his reaction in leaving his victim to die, suggested a high degree of indifference and callousness, whether due to intoxication or some other cause. Though the evidence on this point was thin, it was legally sufficient to support his conviction of depraved indifference murder, as defined at the time of conviction.

No other issue open to consideration by this court has merit. See *Sumner v. Mata*, 449 U.S. 539, 548 (1981) ("[A] court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit[.]").

This opinion complies with *Miranda v. Bennett*, 322 F.3d. 171, 175-77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure.

## V.     Conclusion

The petition for a writ of habeas corpus is denied.

Defendant's motion for discovery of serology tests on the knife recovered at the scene of the crime, pursuant to habeas corpus Rule 6(A), has not been properly disposed of by the magistrate judge. The requested discovery would not affect the disposition of the habeas petition. The motion for discovery is denied.

There has been no substantial showing of the denial of a constitutional right. No certificate of appealability is granted with respect to any of defendant's claims. Defendant has the right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. Counsel shall advise defendant as to how to protect his rights for an appeal.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 23, 2010
      Brooklyn, New York